Scribner, J.
(Orally.)
This case is before us on appeal from the judgment rendered therein by the court of common pleas. The original petition, among other things, says: That on the 4th day of January, 1886, the city council of Toledo, “ having theretofore duly devised and adopted plans for the drainage of a main sewer district, and the construction of a main sewer therein in accordance with the provisions of the statute in such case made and provided, duly adopted a resolution declaring it necessary to construct a main sewer in Junction avenue, in the city of Toledo.” The petition describes the territory in which the proposed sewer was to be located, and further sets forth that “ said resolution provided that said sewer should be constructed in accordance with the plans, specifications and profiles on file in the office of the city civil engineer of said city of Toledo, and that the expense of said sewer should be assessed per benefits upon the property benefited, according to the law and ordinance on the subject of assessments.” Then follows a statement that the resolution was duly approved by the mayor of the city, and that it was published as required by law. It next alleges that “ on the 1st day of February, *115 1886, the common council of said city of Toledo duly passed an ordinance providing for the construction of said sewer in accordance with the aforesaid resolution, and under the direction of said city civil engineer”; that “ said ordinance further provided that the cost and expense of constructing said sewer should be levied and assessed upon the lots benefited thereby, in proportion to the benefits; and that said assessment should be payable in two installments to the contractor constructing said sewer, or his assigns, one-half within ten days from the confirmation of the assessment, and the remainder in one year thereafter.” ' This ordinance, it is averred, was duly approved, and published as required by law. Then follow recitals that the city advertised for bids ; that the plaintiffs were the lowest bidders, and that the contract for the performance of the work was entered into on the 23d day of July, 1886; the petition also avers that the work was completed in all respects, in accordance with the contract, and that it was duly accepted. It further alleges that about the 13th of June, 1887, a committee was appointed to make an assessment “ upon all lots and lands especially benefited by said improvement, in proportion, as nearly as might be, to the special benefits which resulted from said improvement to the several lots and lands so assessed; said resolution providing that said assessment should not exceed, in any case, the special benefits conferred on each lot and parcel of land so assessed.” It is also averred that the committee proceeded with the work, and performed the duties devolved upon them; that they reported an assessment, and filed the same with the clerk of the city; that notice of the assessment was duly published, and a time fixed therein for hearing and confirmation ; that no objections were filed, and that on the 5th of September, 1887, the council duly confirmed the assessment so made, and assigned the same to Gates and Hueston, the contractors.
Next in order in the petition come allegations as to the ownership by the defendants of certain of the property assessed as aforsaid to pay the cost of said improvement; then are set forth by description the parcels owned by the several defendants; the petition avers non-payment of the assessments by either of the defendants, and prays judgment.
*116 The answer of the Lake Shore Railroad Company, among other things, admits that the said city council of Toledo did, on the 19th of June, 1882, pass a resolution declaring that it was necessary to provide drainage for the territory therein described. The answer further sets forth that said resolution was adopted by said city council without any recommendation therefor, by either a board of improvements or a board of commissioners of sewers; that it directed the city civil engineer and the committee on sewers, which committee was made up of members of said council, to prepare the necessary plans for such drainage, and report the same to the city council ; that thereafter the said city civil engineer and said committee on sewers, caused to be made a map of the sewer district as comprised in the boundaries set forth in said resolution, and filed the same with the clerk of said city council, but failed and omitted to report thereon or therewith, plans for the drainage of said district. It was further alleged that said map or plat failed to show, and there was not reported any plans or specifications for the construction of sewers in said district, showing the size, location and inclination thereof, or the depth of the same below the surface. It was also averred that upon the 14th day of July, 1882, the city council, by resolution, directed the clerk of said council to publish • notice that the plans of sewerage for that part of the city of Toledo included within said boundaries, were then ready and on file in the office of the city civil engineer, for examination and inspection, and that objections thereto would be heard on the 7th day of August, 1882; that on the 14th day of August, 1882, the said city council, by resolution, adopted the plans for said sewer district so reported. The answer further averred, that at the said last mentioned date, there had not been, in fact, any plan or plans, or specifications for the drainage of said sewer district prepared or entered upon said plat, or reported to said council, showing the location and construction of the proposed sewers, or showing their size, location or inclination, or the depth at which the same would be placed below the surface; nor had the same been determined upon. Also, that no notice had been given, such as is provided by law, designating the portions of the work *117 proposed to be done in said sewer district, and the boundaries thereof. That at no time was the said engineer directed to make an estimate of the cost of constructing the work according to any plan or plans, nor did he make any such estimate, nor report to the city council what portion of the same would be required for main sewerage, and what portion for local sewerage. That on September 4th, 1882, the said city council passed an ordinance defining and establishing a new main sewer district, known as sewer district No. 18, embracing the property before described. Section two of this ordinance located the main sewer in that district as therein described; that subsequently there was located and entered upon said plat of said sewer district, a sewer number 252, extending in Junction avenue from its intersection with Dorr street, and emptying into Swan creek. The answer then refers to the resolution of the council mentioned in the petition, passed January 4th, 1886,' and avers that it was published on the 16th and 23rd days of January, 1886, and upon no other days; that the ordinance providing for the construction of the sewer was passed February 1st, 1886. The subsequent proceedings, substantially as stated in the petition, are also set forth, and in this connection it is averred that prior to the assessment by said committee appointed to make the same, no estimate of the cost and expense for the construction of said sewer had ever been made or reported to the council; or what proportion thereof would be required for main sewerage, and what portion for local sewerage in said district. It is also averred that the amount assessed upon the property of the company is greatly in excess of what would be the cost and expense of an ordinary sewer or drain of sufficient-capacity to drain or sewer its lands; that said lands did not need local drainage; that the defendant had at its own expense, long prior thereto, provided its said lands therewith, and that said property was not benefited by said improvement; that the amount assessed is greatly in excess of the amount allowed by law to be assessed against it for said improvement ; that said council never acquired jurisdiction or power in the premises to assess any portion of the cost and expense of constructing said sewer against said defendant’s property.
*118 The answers of the other defendants are substantially to the same effect..
The reply avers that there was not, and had not been in Toledo for many years, a board of improvements; and that there had never been a board of commissioners of sewers; that the construction and care of tbe sewers within the city was wholly under the control of the council. The reply also denies many of the material averments of the answer.
The case was heard before us on an agreed statement of facts and a stenographic report of the testimony taken in the court of common pleas.
(1.) The first objection taken to the validity of these proceedings relates to the failure of the council to create a board of improvements to act in the premises and provide proper plans of drainage. Section 602, of the original municipal code is as follows: “ Whenever it may become necessary in the opinion of the council of any city or incorporated village to provide a system of sewerage and drainage for such city or incorporated village, or any part thereof, it shall be the duty of the board of improvements to devise and form, or cause to be devised and formed, a plan of sewerage and drainage for the whole city or incorporated village, or any part or parts thereof as may be designated by the council.” This provision has been amended somewhat, and in sections 2366, 2367, of the Rev. Stats., it is enacted as follows : “ Section 2366. When it becomes necessary, in the opinion of the council of a city or village, to provide a system of sewerage and drainage for such municipal corporation, or any part thereof, it shall be the duty of the board of improvements to devise and form, or cause to be devised and formed, a plan of sewerage and drainage for the whole city or village, or such part thereof as may be designated by the council; but in all cities the council may, by ordinance, declare that the construction, maintenance, and cleaning of the sewers shall be under the care of a board to be called the commissioners of sewers.” “ Section 2367. The commissioners of sewers shall have all the powers, and perform all the duties required of the board of improvements, as provided in this chapter, or *119 elsewhere in this title, in respect to sewers, drains and ditches.”
In the agreed case there is found this stipulation, “That upon the 15th day of April, 1870, the city council of Toledo, by ordinance, established within said city a board of improvements, and that on tbe 21st day of April, 1873, said ordinance establishing said board of improvements was repealed. Since that time no persons have assumed to act as a board of improvements in said city, and there has been no legislation by said city on the subject of a board of improvements.” “That there was not at the time of the passage of the legislation providing for the construction of said sewer in Junction a-venue, and never has been, a commission-of sewers for said city of Toledo, but the construction of sewers in said city has always been under the supervision and control of its common council.”
It is claimed on behalf of the defendants that in the absence of a board of improvements or of a board of commissioners of sewers the council has no power to proceed with the establishment and construction of a system of sewerage as provided for in what was originally chapter 50, of the municipal code. It is also claimed that while the council had power to create a board of improvements, it had no power to abolish it; that the effect of the action of the council in establishing a board of improvements, as shown in the agreed case, was to continue such board in existence ; that its action in attempting to abolish the board is nugatory and of no effect; that the board of improvements still continues, and must still discharge the duties contemplated by the provisions of the statute above quoted.
We are unable to agree with the counsel for the defendants in this respect. We are of opinion that the city council had power to abolish, by repealing the ordinance which created it, the board of improvements provided for in the code. We are also of the opinion that when there is no board of improvements, and no board of commissioners of sewers has been created, the powers which such boards might respectively exercise were they in existence, may be exercised by the council.
*120 It is provided by statute that all improvements shall be under the control of the board of improvements, where such board exists. For example, by section 2191 it is declared that “ no improvemements or repairs shall be ordered or directed by the council in any corporation where such board exists, for any street, lane, alley, avenue, market-house or space, bridge, sewer, drain or ditch, culvert, navigable stream, water-course, ship channel, or public wharf or landing of the corporation, except on the recommendation of the board of improvements.” If the construction contended for by counsel for the defendants is correct, it follows that for the last fifteen years all the public improvements ordered by the city council of Toledo have been made in violation of the provisions of this section of the statute. In our judgment, a board of improvements is in the nature of an agency provided by law to assist the council in its work. Such a board, when created, has certain duties to perform which would otherwise properly be devolved upon the council'itself; when it is abolished the council is required to exercise the powers which would otherwise be exercised by the board of improvements. We think, therefore, so far as this objection is concerned, that it must be overruled.
(2.) It is also insisted that the council had no power to pass the ordinance at the date when it was passed. It seems by the record and the evidence in the case, that the ordinance was passed immediately upon the expiration of the two weeks during which the notice of the preliminary resolution was published. By the statute, parties claiming damages are given two weeks after the expiration of the time limited for the publication of the notice, within which to file their claims, and the statute further provides by section 2316, that “ at the expiration of the time limited for filing claims for damages, as provided in the last section, the council shall determine whether it will proceed with the proposed improvement, or not; also whether the claims for damages filed as aforesaid shall be judicially inquired into, as hereinafter provided, before commencing, ,or after the completion of the proposed improvement; and if it decides to proceed therewith, an ordinance for the purpose shall be passed; and where provi *121 sion as to damages is not made in this chapter, the provisions in chapter three of this division shall apply to the proceeding so far as they are applicable.”
It is argued that by the language of this section the council has no power to pass an ordinance providing for the improvement until the time limited for filing claims for damages has expired, and as this ordinance was passed on the first day of February, and the two weeks for publication expired on the 30th of January, that the council undertook to act in the matter of passing the ordinance before by law they had authority to do so. The case of Welker v. Potter, 18 Ohio St. 85, is relied upon in support of this claim. That case was commented upon in the case of Finnell v. Kates, 19 Ohio St. 405. And in the case of Bolton v. The City of Cleveland, 35 Ohio St. 319, it was said by the court that the doctrine of the case of Welker v. Potter, in giving a construction to the act of April 5th, 1866, is good law; that by a proper construction of the last named act the council had no power to pass the ordinance until the period described in the statute had expired. But in the case of Upington v. Oviatt, Treasurer, 24 Ohio St. 232, which arose under the municipal code, the court, after a careful examination of the question, came to this conclusion: “ If the provisions of section 563, relating to the publication of the preliminary resolution above referred to, are to be regarded, as between the city and the owners of the property assessed, as substantial and peremptory, the failure to make such publication is, nevertheless, a defect which falls within the curative provisions of sections 550 and 551 of said act. Welker v. Potter, 18 Ohio St. 85, examined and distinguished.” If the proceedings come within the curative provisions of the statute where no resolution is published, for a much stronger reason should they come within those provisions where the resolution has been published, and the only objection is that the time for filing claims for damages had not expired; and especially is this so where, as in the case before us, no damages have been claimed, or are embraced in the assessments which have been made. Finnell v. Kates, 19 Ohio St. 405.
(3.) An objection is also taken on account of the failure to properly prepare the plans and specifications, and to make and *122 report estimates of the cost of the improvement. This objection will be considered further on.
(4.) We come next to the consideration of what we regard as the important questions arising in the case. And these relate to the power of the city council to make the assessments in controversy here.
In order to arrive at a correct understanding of these questions, and to properly determine them, it is necessary to look carefully to the language of the statute itself.
Passing for the present the provisions which relate to the preparation of plans for drainage, I come at once to those which concern the assessment for and collection of, the cost and expense incurred in the construction of sewers.
Section 2372 is as follows: “ Where the corporation is divided into sewer districts, the assessments provided for in this subdivision shall be by districts.”
This provision, it will be observed, relates to the-making of the assessments and to the territory upon which they shall be levied, where the corporation is divided into sewer districts. It does not itself provide for the making of the assessments.
Section 2379 relates to assessments for the cost of main sewers.
“Section 2379: The council shall provide for assessing the cost and expenses of constructing main sewers upon the lots and lands bounding or abutting upon the streets, lanes, alleys, highways, market-spaces, public landings and commons, in or along which the same shall pass, by the feet front, or according to the valuation of the same on the tax list, or according to benefits, as it shall determine.’?
The assessments here provided for have reference to sewers constructed in highways, or other public grounds.
“ Section 2380 : The assessment shall not exceed the sum that would, in the opinion of the council, be required to construct an ordinary street sewer, or drain, of sufficient capacity to drain or sewer such lots or lands ; nor shall ,any lots or lands be assessed that do not need local drainage, or which are then provided therewith ; and the excess of the cost, over the assessment herein authorized, shall he paid out of the sewer fund of the corporation.”
*123 This limitation upon the power of special assessments we regard as of controlling importance, and will be further considered as we proceed. Its effect, so far as special assessments are concerned, is to place main sewers in the same category with local sewers.
Section 2381 relates to the assessment for the cost of sewers constructed through lands other than highways or public grounds. In other words, where the right of way for sewer purposes has been acquired through private property. The power of condemnation for such purpose is expressly given by statute: — R. S. sec. 2232, par. 19.
“ Section 2381. The council shall also provide for assessing the expenses of local sewerage, upon the feet front of lots and lands, by or through which any portion of the main sewer may pass, or according to the valuation of the same upon the tax list, or in proportion to benefits, as it may determine in each case.”
The rules to govern in making the assessment where it is to be made by the feet front, are found in section 2382.
“Sec. 2382. If the assessment is.upon the feet front, the basis shall be determined by taking the total cost of constructing the main and lateral sewers and drains, and the necessary appurtenances and inlets, and dividing the gross amount by the number of feet front subject to assessment, as herein provided for, on each side of the street, lane, alley, highway, common, market-place, or public landing, through or in which such sewers and drains may be laid, the quotient forming the amount to be assessed per foot front for .each side of the street, lane, alley, highway, common, market-place, or public landing, as a charge for the cost and expenses of constructing the sewers and drains, and their necessary appurtenances.”
But this power of assessment is expressly limited as provided in section 2380, and in section 2384 which latter is as follows:
“ Section 2384. In no case shall the assessment exceed the sum of two dollars per foot front on the property assessed; and when the amount of the quotient exceeds that sum, the excess shall he paid out of the sewer fund of the corporation
*124 It may be here remarked that the concluding clause of this section and of section 2380 complements section 2372. Where sewer districts are created, the special assessments and tax levies for sewer purposes must be by districts.
Section 2385 provides that “If the assessment be according to benefits, the council shall appoint three judicious freeholders of the corporation, or its vicinity, who shall assess the estimated expense of the main sewerage upon the lots or lands along which the same passes, in the manner above provided, in proportion to benefits; and the estimated expense of the local sewerage, where such local sewerage is provided for by this subdivision, shall be assessed on such lots and lands as will, in their opinion, be benefited thereby, whether fronting on the public ground on which the local sewer is to be constructed or not, in proportion, as nearly as may be, to the benefits which may result to each lot or parcel of land.”
While the language of this section is somewhat general in its character, it is to be construed in connection with sections 2380 and 2384, and in such manner as not to defeat the limitations there imposed. By section 2380, the power to assess the abutting property for the cost of a main sewer is limited to such sum as would be “required to construct an ordinary street sewer or drain of sufficient capacity to drain or sewer such lots or lands.” If the lands are already provided with, or do not need local drainage, they are not to be assessed at all. From this language it clearly appears that so far as the power of special assessment is concerned, a main sewer is to be treated as a local sewer. In this respect main sewers and local sewers are treated precisely alike. This is also made plain by the language of section 2381, relating to sewers constructed upon lands or rights of way acquired for sewer purposes by condemnation or purchase, where provision is made “for assessing the expenses of local sewerage upon the feet front of lots and lands, by or through which any portion of the main sewer may pass,” etc. Section 2384 limits the power of assessment in all cases to two dollars per foot front of the property assessed. It can scarcely be supposed that the legislature, by the language contained in section 2385, directing the manner of making special assessments by benefits, intended to *125 withdraw from the property-owner the protection provided by the limitation contained in sections 2380 and 2384, or to permit the city council by electing to assess the cost of constructing sewers according to benefits, to evade the wholesome restriction imposed by those sections. Under section 2385, the council may assess, according to benefits, lands abutting upon sewers constructed on property that has been condemned or purchased, as provided in section 2381; and possibly upon lands lying contiguous to the sewer, which may be afforded local sewerage thereby, although not in fact abutting thereon; but manifestly it was not intended by the provisions of section 2385, to authorize the council, under the guise of special benefits, to make an assessment, general in its character, of the entire cost of the improvement, upon ail the lands embraced within the sewer district. Sewers are not like highways. The latter are open and accessible to the public. The former are constructed beneath the surface of the earth, and can only confer special benefits where they are accessible for, or furnish local drainage. The Supreme Court has held that the courts may inquire into and determine whether or not lands which have been assessed, are already provided with or need local drainage; and that upon this question, they are not concluded by the action of the city council. Wewell v. Cincinnati, 45 Ohio St. 407. It follows that where lands are assessed for special benefits alleged to have been conferred by the construction of sewers, the courts may inquire into and determine whether or not the lands so assessed, have in fact been furnished with local drainage so as to be specially benefited. If it be found that they have been, then the action of the council in making the assessment, provided it has not exceeded the limit contained in sections 2380 and 2384, can not be collaterally impeached.
Section 2394 relates to assessments in new sewer districts.
“ Section 2394. When a sewer district is set off or established, the main sewer of which is a continuation of, or drain through or into, the main sewer of any other district, the council, in providing for assessing the' cost and expenses of the main *126 sewer in such new sewer district, may provide for assessing upon the lots and lands therein, such proportion as they shall determine to be just, of the cost and expenses of constructing any unconstructed part of the main sewer in the district through which the new main sewer drains; which assessment, when the proportion thereof is determined, shall be made in the manner that other assessments are herein directed to be made.”
The rules and limitations before noticed, are applicable here.
Section 2395 is as follows : “ The council shall have power to subdivide any main sewer district into sub-main sewer districts, or laterel or branch sewer districts, in the manner in which the establishment of main sewer districts is provided for; lay out and construct in such sub-main, or lateral or branch sewer districts, sub-main, lateral or branch sewers having a common outlet into a main sewer; and assess and collect the cost of such construction upon the lots and lands in such sub-main, or lateral or branch sewer district, in all respects as directed in this subdivision for the assessment and collection of the cost of constructing main sewers.”
Section 2396 provides for a pro rata assessment where the council determines to construct only a portion of the sewers in the sub-main, lateral or branch sewer districts.
As reflecting some light on the provisions of the foregoing section, see Cincinnati v. Bickett, 26 Ohio St. 49.
“ Section 2397. The council may provide for the construction of branch or local sewers, within any street, or other public ground within the corporation, wherein a main sewer is not established or built, which local sewers shall connect with a main sewer convenient thereto, as the council may direct; and if the corporation is laid off into districts, the connection shall be with a main sewer in the district wherein the local sewers are constructed; but no sewer shall be considered local, except such as are intended for and used exclusively for the drainage and accommodation of lots abutting thereon.”
This section contains a definition of a local sewer, strictly so-called. , •
*127 Section 2398 provides that “ proceedings for the establishment and construction of local sewers, as provided in the preceding section, and for the assessment and collection of the cost and expenses thereof, shall be as directed in the previous sections of this subdivision regulating the establishment and construction of local sewers and connection with main sewers.”
In the municipal code as originally passed, the words “ the establishment and construction of local sewers and connection with main sewers,” read “in connection with main sewers.” Section 632.
I have now read all the sections of the subdivision of the statutes relating to the assessment and taxation authorized for the collection of the expenses of constructing either main or local sewers. Returning now to sections 2380 and 2384, I call more particular attention to some of the provisions of those sections. After having directed, in section 2379, that the council shall provide for the cost and expense of constructing main sewers, it is declared in section 2380, that “ the assessment shall not exceed the sum that would, in the opinion of the council, be required to construct an ordinary street sewer or drain, of sufficient capacity to drain or sewer” the lots or lands assessed; “ nor shall any lots or lands be assessed, that do not need local drainage, or which are then provided therewith; and the excess of the cost, over the assessment herein authorized, shall be paid out of the sewer fund of the corporation.”
In section 2384, we find, as before noticed, that “ in no case shall the assessment exceed the sum of two dollars per foot front on the propertj’' assessed; and when the amount of the quotient exceeds that sum, the excess shall be paid out of the sewer fund of the corporation.”
We turn now to sections 2682 and 2683 of the statutes. Section 2682 is as follows : “The council of a city or village shall have power to levy, annually, for the general purposes of the corporation, such amount of taxes, on each dollar of valuation of taxable property in the corporation on the tax list, as may be determined upon by it, not exceeding the following rates.” These rates are thereafter stated.
*128 Section 2683 provides : “In addition to the taxes specified in the last section, the council in each city and village may levy taxes, annually, for any improvement authorized by this title, and for the following purposes” : Paragraph 20 of this section reads: “ For the construction and repair of sewers, drains, and ditches; and where the corporation is divided into sewer districts, the levy shall be by such districts.”
We find, therefore, as already stated, that in sections 2380 and 2384 a limit is placed upon the power of special assessment for the cost of constructing sewers. The assessment upon lots or lands abutting upon or lying contiguous to a highway or public grounds along which a sewer is constructed, shall not exceed the sum that would in the opinion of the council be required to construct an ordinary street sewer or drain of sufficient capacity to drain such lots or lands, and the excess' of the cost over the assessment so authorized- shall be paid out of the sewer fund of the corporation. In providing for the assessment to meet the expense of constructing local sewers, it is declared in section 2384 that in no case shall the assessment exeeed the sum of two dollarsfper front foot on the property assessed : the excess is to be paid out of the sewer fund of the corporation. Authority is granted to the council to levy a general tax to be'devoted to defraying the expense of constructing and repairing sewers; this tax is to be levied, in cases where there are sewer districts, upon the property embraced in such district, by general levy.
After having given a very laborious examination to this statute; after having read and compared all its provisions many times; after having referred to all the authorities at hand bearing upon the questions involved, our conclusion is this: That where a sewer has been constructed, whether the municipal corporation which constructed^ t has been divided into sewer districts, or itself constitutes a sewer district; whether it is a main sewer, intended to furnish drainage for the whole territory lying within the district, or is a local sewer properly so called — the power to levy special assessments to meet the cost and expenses of such improvement is limited to what would be the fair cost of providing, or — in the language of section 2380, to the cost and expenses “ required to construct an *129 ordinary street sewer, or drain, of sufficient capacity to drain or sewer such lots or lands.” And that as to all sewers, whether main sewers, or local sewers so called, the limitation provided in section 2384 applies; that in no case shall the cost assessed for constructing a sewer exceed two dollars per foot front of. the property assessed.
The system contemplated by the statute looks, in the first instance, to the drainage of a large amount of territory — such territory as may be comprised within the bounds of a sewer district; if the corporation be not divided into districts, then to provide, by proper drainage, for such part of the territory as may connect with the main sewer.
In providing a main sewer which is intended to furnish an outlet for the entire district, while it may provide local sewerage for the property abutting upon it, that property is to pay only such proportion of the cost as would be required to furnish it with drainage, and to that extent and in that proportion the sewer, although it be a main sewer, is as to that property to be regarded as a local sewer. As to such proportion of it as would be required, over and beyond the wants and necessities of the abutting property, to furnish an outlet to outlying property, it is to be treated as a main sewer, the cost and expense of which is not to be borne by the abutting property. The same rules apply to a main sewer as to a local sewer proper — such a sewer as is described in section 2397, where it is said, “ No sewer shall be considered local except such as are intended for and used exclusively for thedrainage and accommodation of lots abutting thereon. “ The expense over and beyond this limit, or exceeding the proportion of the cost and expense authorized to be assessed on the abutting property, is to be paid from the sewer fund of the corporation. This is provided for by general levj”, as other taxes are raised, .upon the property within the sewer district.
It was suggested in the argument that there may be some question as to the constitutional power of the legislature to provide for levying general taxes upon a portion only of the taxable property within the municipality. If this doubt be well founded, the proposition resolves itself into this, that if it be not lawful to assess the cost of the improvement by way of a *130 general tax upon the property within the district, then such cost must come from the general fund ¡of the corporation. However this may be, it does not touch the question as to the limit of the expense to be cbarged^upon the abutting property. Such property is to be subject only to such part of the expense as would be required to 'construct a sewer of sufficient dimensions to furnish it with drainage.
The method of taxation above suggested is provided in relation to school districts. These districts are made up of territory without reference tojthe political divisions of the state. Territory attached to a city, may,[ with the city, constitute a school district; outside territory may constitute a school district, or special school districts may be arranged and provided for. By the provisions of the statute, where the fund raised by the state is not sufficient, a levy may be made upon the property within the district; this may be certified to the treasurer, placed upon the tax duplicate, and collected as other taxes are collected. Rev. Stats, secs. 3885-3892, ¡3951-3956, 3958-3963. Upon this^subject reference may be had to Judge Cooley’s work on Taxation, chapter 5, where it is held that the legislature may grant power to levy taxes without reference to the political subdivisions of the state. We see no constitutional objection to levying upon the lands and other property within a séwer district properly created, a general tax to provide a sewer fund to meet the cost and expense of constructing a sewer within the district.
The testimony shows that the Lake Shore Company has provided, for itself, upon its lands lying west of Junction avenue, in which this sewer is located and constructed, a system of drainage at an expense of something like $3000; that it has constructed a brick sewer having the dimensions of 28 inches within the shell and about a thousand feet in length; that it has laid sewer pipe, provided catch basins and open drains and ditches required for the proper drainage of its tracks, round-houses and buildings constructed upon that part of its property. And it is claimed on the part of counsel for the Lake Shore Company, that the company is entitled to the protection provided for in section 2380 of the *131 statute ; “ nor shall any lots or lands be assessed that do not need local drainage, or which are then provided therewith.”
The brick sewer built by the company is more than one-half as large as the main sewer in Junction avenue ; it has its outlet into a gulley near Swan creek, and thence into Swan creek, the same outlet provided for by the main sewer here in question. We think under the ruling of the Supreme Court in the 45th Ohio State, 407, which has already been referred to, that the company is entitled to the benefit of this provision of the statute, so far as the property lying upon the west side of Junction avenue is concerned. The court in that case say: “ But while the objections to which we have referred, may be insufficient to invalidate or prevent the enforcement of the assessment in controversy, the lots which, as it appears from the finding of facts, were provided with local drainage at the time the improvement was ordered and the assessment made, should, we think, be exempt from the assessment. The claim for exemption is based upon a prohibitory clause of section 2380 of the Revised Statutes, which section is in the words following:
Section 2380. The assessment shall not exceed the sum that would, in the opinion of the council, be required to construct an ordinary street sewer, or drain, of sufficient capacity to drain or sewer such lots or lands; nor shall any lots or lands he assessed that do not need local drainage, or which are then provided therewith; and the excess of the cost, over the assessment herein authorized, shall be paid out of the sewer fund of the corporation.’
“ The question for determination under the statute is one of fact between the municipality and the owners of abutting property, viz : whether certain lots or lands are so provided with proper local drainage, in the statutory sense, as tobe exempt from the special assessment. The local drainage provided, which can be effective to exempt the property drained, must, of course, be of such a character as to satisfy the statute. Any ordinary surface drainage will not be sufficient. The dimensions, the mode of construction, the material used, the location, the outlet, the sanitary conditions, and other considerations should be such, as would belong to a *132 sewer or drain built substantially in conformity to tbe requirement of the statute. As illustrated in several of the cases growing out of this public improvement, lots drained by a wooden box drain, placed as a temporary expedient in anticipation of regular sewerage, or drained simply by flowage over the surface, are not supplied with local drainage as to be exempt from assessments.
“The record discloses that nearly all the lots exempted from assessment, are connected by pipes or drains with a large sewer called ‘Deer Creek Sewer,’ built between thirty and forty feet below the surface of the ground, constructed more than forty years ago in the natural water-course known as Deer Creeb;, and extending from a point north of the eighth sewer division, and discharging into the Ohio River. The various pieces of property so connected, were never assessed by the city for the cost and expense of the pipes or drains, nor for the construction of any part of Deer Creek sewer. Neither the pipes nor drains, nor the sewer itself, have ever been adopted as part of the regular sewerage plan of the city; but Deer Creek sewer was constructed in parts, portions by the city and portions by private persons, through their own property, It has been frequently repaired by the city, and frequently by private persons on private property. Certain streets and the adjacent territory have been drained into it, by means of sewer pipes which the city caused to be connected with it. It. appears from the finding, that the lands connected with this well known sewer, and certain other lands having connection with a trunk sewer in Eggleston avenue, were furnished with local drainage adequate to all the requirements of the statute. Indeed it is contended that the Deer Creek sewer is as permanent and efficient for the drainage as the Eggleston avenue sewer, into which empty the sewers that are made the subject of the disputed assessment.
“ The exempted lots are part and parcel of lands which originally needed local drainage, but were provided therewith by utilizing the natural water course for sewerage- purposes. That it was thus rendered available for such purposes, is a sufficient indication, that local drainage was needed by the lots connected therewith. The statute manifestly contemplates *133 two classes of lotsjor land's: First — Those which are so situate topographically, as to drain themselves by natural outlets into rivers or streams, or other receptacles. Second — Those which, though from any cause they once required artificial local drainage, have been sufficiently provided therewith. When so provided, and the fact is so found, the statute in prohibitory language exempts the lots or lands from special assessment.
“ In order however to be provided with local drainage, within the meaning of section 2380, we do not deem it essential, that the drainage must have been furnished in all cases, under a regular sewerage system ordered by the city, and that abutting property must have been assessed for the costs and expenses, and the assessment paid by the owner. The language of the statute, that no lots or lands shall be assessed, that do no.t need local drainage, or which are then provided therewith,’ is general, and can not be so restricted as to make the exemption or prohibition applicable only to drainage already paid for under a plan established by the municipality. Through what instrumentality the drainage must have been supplied, the statute is silent; but such drainage as would come up to a proper standard, must have been provided. To enact that lots shall be exempt from a special sewer assessment, after they have been in all respects provided with drainage and assessed for the same, and have paid the .assessment under a regular system of sewerage established by ordinance, would seem to be an unnecessary statutory provision. And to give the language of the statute its due force and effect, it should not be limited, in its construction, to such local drainage only as had its origin in a system so established.”
It results from the doctrine here declared, that no matter how the drainage is provided, no matter what system is adopted, if the property be sufficiently provided with local drainage, it is not subject to assessment under the statute.
The theory upon which a sewer system is provided by the public, is that it is a sanitary measure. The drainage furnished adjacent lands is merely incidental; the primary object is the promotion of the general health of the public. If the abutting *134 property is specially benefited by means of a public improvement intended for the promotion of the public health and convenience, to that extent, within the limit provided, the abutting property may be called upon to payra proportion of the expense incurred; the remainder is to be raised by a general levy.
The legislature has recognized the justice of this doctrine, and has provided that where sewers are constructed in a municipality, the abutting property-owners may be required to contribute to the expense incurred in the making of the improvement, to the extent that their property receives special benefits. But it has limited the power of the municipality to subject the property-owners to special levies in that regard. In the first instance, by providing that the cost of constructing a main sewer shall be assessed upon abutting property only to the extent required to provide local drainage for such property, The same rule is applied where a local sewer proper is constructed. The provision that the assessment shall not exceed two dollars per foot front, we think is general in its character, and is to be applied in all cases, no matter whether the assessment be by the foot front, or by benefits, or upon the duplicate valuations.
(5.) The objection taken in regard to the failure to provide plans and specifications for drainage we do not think touches the jurisdiction of the council to make the improvement. Rev. Stats., secs. 2366, 2370, 2371, 2373, 2374, 2375, 2376, 2377, 2378. We think that whatever question may be raised in regard to the failure of the authorities to prepare the proper plans and estimates, if there be any valid objection of this character, cannot be interposed by these property owners. To the extent to which they are provided with local drainage, under the limitations above laid down, they are liable to assessment. A municipal corporation may provide for the construction of sewers without creating sewer districts. Hartwell v. R. R. Co., 40 Ohio St. 155.
Our conclusion in the present case is, that the property of the Lake Shore Company lying west of Junction avenue, should bear no part of the expense of this improvement. The other property held by the several defendants, except that *135 of the Michigan Central Railway Company, is chargeable with one dollar and a half per foot front. It is agreed “ that an ordinary street sewer, or drain, located on the same line as said sewer number 252, of sufficient capacity to drain or sewer so much of said defendants’ lands as abut thereon, or would be susceptible of drainage therein, would cost not to exceed three dollars per running foot, which price includes cost of man-holes, catch-basins and street intersections. The cost of said sewer number 252 was thirty-six thousand four hundred and two dollars ($36,402).” This entire amount was levied, in the form of special assessments for alleged benefits, upon the lots and lands lying within the sewer district.
Brown & Geddes, for plaintiff.
E. D. Potter, Jr., for defendants.
The decree for the assessment in this case will be limited to the amount of three dollars per lineal foot upon the abutting property subject to the assessment; that is to one dollar and fifty cents per lineal foot upon the property lying on each side of the improvement.
As to the Michigan Central Railway Company, it appears that the right of -way of thaj company has been assessed for a portion of the cost of the construction of the sewer. It is shown that this right of way does not abut upon Junction avenue, in which the sewer was constructed. It further appears that the sewer can not be made available for the purpose of draining this right of way; in other words, that it is not thereby furnished with local sewerage. We think as to the assessment made thereon, judgment should be for the defendant.